IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NL ENTERPRISES, LLC,<br><br>           Plaintiff,<br><br>vs.<br><br>UNITED PACIFIC PET, LLC,<br><br>           Defendant. | 4:15CV3163<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Plaintiff/Counterclaim Defendant NL Enterprises, LLC's ("NL") motion to strike Defendant/Counterclaimant United Pacific Pet, LLC's ("UPP") prayer for injunctive relief set forth in UPP's amended counterclaims ([Filing No. 24](#)). For the reason's set forth below, the motion is denied.

## BACKGROUND

On or about December 20, 2012, NL Enterprises and UPP entered into a distribution contract (the "Distribution Contract") whereby NL granted UPP the exclusive right to promote, distribute, and sell NL's products within the Southern California territory. On or about November 25, 2015, NL informed UPP it was terminating the Distribution Contract because UPP allegedly failed to meet "mutually agreed purchase objectives" as defined in the Distribution Contract. NL has allegedly appointed one of UPP's competitors as NL's exclusive distributor in the Southern California territory.

NL filed an action in the District Court of Douglas County, Nebraska seeking a court order declaring it lawfully terminated the Distribution Contract. UPP removed the action to this court and filed an answer and counterclaim against NL for breach of contract. UPP's counterclaim requests both damages and injunctive relief.

With respect to injunctive relief, UPP's prayer specifically states:

(a) That, as a result of the irreparable harm suffered by UPP, the Court enter both a preliminary and permanent injunction enjoining NL Enterprises from terminating the Contract and that the Contract be continued for an additional year pursuant to Article 5.1;

(b) That, as a result of the irreparable harm suffered by UPP, the Court enter both a preliminary and permanent injunction enjoining NL Enterprises from appointing and/or allowing Newco or any other entity from distributing its products in UPP's exclusive territory;

Filing No. 18 at CM/ECF p. 10.

NL has moved to strike UPP's claim for injunctive relief, (Filing No. 24).

## ANALYSIS

A party may move to "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions are disfavored and "infrequently granted." Stanbury Law Firm v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal citations removed); see also BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007)(describing a motion to strike as an "extreme and disfavored measure"). The court has liberal discretion in ruling on motions to strike. Stanbury, 221 F.3d at 1063. "A prayer for relief not available under applicable law, or which asserts a damage claim in excess of the maximum recovery permitted by law, is properly subject to a motion to strike." Id. However, motions to strike will be denied if the content sought to be stricken "fairly presents a question of law or fact which the court ought to hear." Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977).

NL moves to strike UPP's prayer for injunctive relief arguing: 1) all of UPP's alleged damages have an adequate remedy at law and therefore injunctive relief is

unavailable under Nebraska law; and 2) the Distribution Contract was one for personal services and specific performance and as such, specific performance is not available as a remedy. UPP counters that injunctive relief is an appropriate remedy for the alleged "irreparable" harm to its goodwill and customer relationships. UPP further asserts the contract was not one for personal services.

1.  Irreparable Harm.

Under Nebraska law,[1] a harm is irreparable "when it is of such a character or nature that the party injured cannot be adequately compensated therefor in damages or when the damages which may result therefrom cannot be measured by any certain pecuniary standard, or it is shown that the party who must respond is insolvent and for that reason incapable of responding in damages." Cent. Nebraska Broad. Co. v. Heartland Radio, Inc., 251 Neb. 929, 933, 560 N.W.2d 770, 772 (1997) (citing Eidemiller Ice Co. v. Guthrie, 42 Neb. 238, 60 N.W. 717 (1894)). A harm will not be considered irreparable merely because it is labeled as such.

In Cent. Nebraska Broadcasting Co. a radio broadcaster sought to enjoin defendant – also a broadcaster – from adding an antennae to a radio tower on which the plaintiff already had an antennae. The plaintiff provided expert testimony that an additional antennae could cause the tower to collapse which would result in irreparable harm consisting of fewer listeners, reduced advertising, and a loss of reputation and goodwill. The court, on summary judgment, rejected the plaintiff's request for an injunction, finding all of its claimed damages – including those for damage to reputation and loss of goodwill – were claims for lost profits that could be adequately compensated as monetary damages. Id.

---

[1] The Distribution Contract contains a choice of law provision naming Nebraska law as controlling. Filing No. 1-1, ¶9.1 at CM/ECF p. 12.

However, under different circumstances, where an adequate showing of loss of goodwill has been made, injunctive relief may be appropriate. "A company's loss of goodwill and reputation among its customers is often not quantifiable, and can therefore amount to irreparable harm." Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC, 2015 WL 3544847 at *4, --- F. Supp. 3d --- (D.S.D. 2015)(citing Rogers Grp., Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 789-90 (8th Cir. 2010)); Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc. 336 F.3d 801, 805 (8th Cir. 2003); United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 741 (8th Cir. 2002).

For instance, in Med. Shoppe, a pharmacy/franchisor sued one of its franchisees that attempted to cease operating its pharmacy as a Medicine Shoppe franchise and run its pharmacy business independently. The plaintiff moved for a preliminary injunction asking the district court to prevent the defendant from operating its business as anything other than a "Medicine Shoppe" pharmacy. The Eighth Circuit upheld the district court's imposition of the plaintiff's requested preliminary injunction due, in part, to defendant's claimed irreparable harm of customer confusion, loss of reputation, and loss of goodwill. The court found "[h]arm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars." Med. Shoppe Int'l, Inc., 336 F.3d at 805.

In this case, UPP's counterclaim alleges it is a "strong and well-respected" distributor of pet products in Southern California and that it assumed "substantial . . . reputational risk in devoting its resources to promote NL's products without any guarantee that its products would be commercially viable in said territory." Filing No. 18 at CM/CF p. 7. It further asserts it is losing customers and NL is informing UPP's customers that UPP is no longer the exclusive distributor of NL's products.

4

With the current review based solely on the pleadings, the court cannot find that UPP's claim of irreparable harm lacks merit. Under Nebraska law, proving irreparable harm due to the loss of goodwill is a high hurdle to clear. But Central Nebraska Broadcasting case was decided on summary judgment, not a motion to strike, and the Eighth Circuit has found that in certain circumstances, the alleged loss of goodwill and reputation can constitute irreparable harm sufficient to warrant an injunctive relief. At this very early stage of the case, the court cannot foreclose the possibility of injunctive relief. It may well be that all of UPP's claimed harm can be remedied by an award of damages, but that question is better answered on a motion for summary judgment.

2. Personal Services Contract.

NL further argues injunctive relief is not available because the Distribution Contract is one for personal services. "[I]t is well settled, as a general rule, that courts will not undertake to enforce specific performance of contracts for personal service, or interfere by injunction to prevent their breach." Rudolph v. Andrew Murphy & Son, 121 Neb. 612, 237 N.W. 659, 661 (1931). UPP does not argue with this general rule. Rather, it asserts factual questions exist as to whether its contract with NL can be considered one for personal services.

In determining whether a contract is for personal services, Nebraska courts have looked to whether the "reliance for [the contract's] performance is placed on the integrity, credit, or responsibility of a party, or that confidence or trust is reposed in [the party] personally for its performance." Schupack v. McDonald System, Inc., 200 Neb. 485, 489, 264 N.W.2d 827, 829 (1978) (evaluating whether a contract was one for personal service in order to determine whether the contract was assignable). Where a contract depends upon the "skills and industry" of a party, the contract is more likely to be deemed one for personal services. Wilson v. Fieldgrove, 280 Neb. 548, 552-53, 787 N.W.2d 707, 712-

713 (2010) (discussing whether a sharecrop agreement was one for personal services). While Nebraska courts have outlined factors to consider in determining whether a contract is one for personal services, the parties have not cited, and the court did not find, a Nebraska case addressing that issue in the context of exclusive distribution contracts.

While some courts have determined an exclusive distribution contract may be one for personal services, that holding is not a foregone conclusion. In Sally Beauty Co., Inc. v. Nexxus Products Co., Inc., 801 F.2d 1001 (7th Cir. 1986) the court considered whether a contract under which the plaintiff became the sole distributor of defendant's hair care products throughout Texas was one for "personal services." In Sally Beauty, the plaintiff was the assignee of a contract that granted the assignor exclusive rights to distribute Nexxus products. Nexxus cancelled the contract, arguing the contract was one for personal services and could not be assigned without its permission. Sally Beauty sued, seeking enforcement of the contract.

The trial court granted summary judgment for the defendant, finding the contract was one for personal services and therefore could not be assigned to a third party. Although the Seventh Circuit determined Nexxus was entitled to summary judgment, it did not adopt the trial court's reasoning. The Seventh Circuit determined the trial court erred in finding, as a matter of law, that the distribution contract was one for personal services. Sally Beauty Co., 801 F.2d at 1004-05. The court noted the contract was formed between two corporations and:

> Nexxus did not meet its burden on the question of the parties' reasons for entering into the agreement. Although it might be reasonable to conclude that [the parties] had based their agreement on a relationship of personal trust and confidence . . . this is a finding of fact.

Id. at 1004 (internal quotations omitted).

6

Other courts have likewise concluded that distribution contracts are not personal service contracts as a matter of law. See Fransmart, LLC v. Freshii Development, LLC, 768 F. Supp. 2d 851, 860 (E.D. Va. 2011)(discussing factors to consider when determining whether an exclusive marking and sales agreement was one for personal services); Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc., 842 F.Supp. 693, 699 (W.D.N.Y. 1993)(analyzing whether the distribution contract at issue was one for personal services).

Plaintiff's motion to strike Defendant's prayer for injunctive relief under Fed. R. Civ. P. 12(f) must be denied. This court cannot decide whether the Distribution Contract is a personal services contract, or whether an adequate remedy at law exists, based solely on the pleadings.

Accordingly,

IT IS ORDERED: Plaintiff/Counterclaim Defendant's motion to strike, (Filing No. 24), is denied.

Dated this 9th day of May, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.